# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT DIMOND,

        **Plaintiff,**

v.                                           CIV. No. 96-1013 JP/WWD

**ALLSUP'S CONVENIENCE STORES, INC.,**

        **Defendant.**

## MEMORANDUM OPINION

**I.**     **The January 12, 1998 Dismissal of Plaintiff's Case under Rule 41(b)**

Plaintiff, a lawyer, who also has been a party-plaintiff in at least twenty other lawsuits, and who was identified as the only witness who would testify in support of his claim at the trial of this action, did not appear in court for the long-scheduled jury trial of his case and actually ignored an order of this court—a subpoena served on Plaintiff that required his attendance at the trial. All others involved were present at the time and place set for the trial, including:

- The trial judge,

- The Plaintiff's lawyer, who had advised the Plaintiff to be present for trial,

- The attorneys for the Defendant,

- The Defendant's witnesses,

- Twenty citizens, who had left jobs, homes, and personal activities to report for jury selection and duty, if chosen to be on the jury on Plaintiff's case,

- The courtroom deputy, who had carefully sent notice of the original trial date (which had to be continued because of Plaintiff's untimely request to present additional briefing) and notice of the rescheduled trial date,

- The law clerk who had worked diligently in preparing for the trial,
- The Court Security Officer

Because the Plaintiff refused to attend the trial of his action and present his testimony, which was the only evidence to be offered in support of his claim, the trial court found on the record (*Transcript of Proceedings held January 12, 1998* at 14) that Plaintiff failed to prosecute his lawsuit and, therefore, dismissed it with prejudice in accordance with Federal Rule of Civil Procedure 41(b). The Court of Appeals reversed and remanded for a further explanation of why the trial court dismissed Plaintiff's case.

## II. The *Ehrenhaus* Analysis

Plaintiff appealed the dismissal and the Court of Appeals for the Tenth Circuit reversed and remanded the case to this court for analysis under Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992).[1] Ehrenhaus states that a court must consider five factors before dismissing a complaint prior to trial because of a plaintiff's failure to prosecute his case. These criteria include:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

Id. at 921 (internal citations and quotations omitted). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an

---

[1] Because the court made extensive findings on the record before dismissing the action, this court understands its duty on remand, as required by the Order and Judgment, to be that of marshaling the findings under the five Ehrenhaus factors. However, there appears to be a question of whether Ehrenhaus should apply to the circumstances of this case. See Discussion of Fed. R. Civ. P. 50(a) dismissals for insufficiency of the evidence, Part III, infra.

2

appropriate sanction." Id. (quoting Meade v. Grubbs, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)). Hence, the Ehrenhaus criteria are examined in turn.

### A. *Actual Prejudice to the Defendant*

On June 10, 1997, the parties in this case were given notice of a jury trial to begin on July 8, 1997. On June 26, 1997, at a call of the cases scheduled for trial on July 8, 1997, Plaintiff requested permission to file a motion to be allowed to file a surreply to Defendant's motion for summary judgment, which had already been fully briefed. Because Plaintiff's motion requesting leave to file a surreply was opposed by Defendant and could not be fully briefed and considered by the court in the few days remaining before the scheduled trial, the trial court vacated the July 8, 1997 trial date. *Transcript of Proceedings Held January 12, 1998* at 11. Defendant was prejudiced by Plaintiff's eleventh hour request because Defendant had already done much of the preparation for trial on July 8.

Plaintiff's failure to appear for the trial rescheduled to begin on January 12, 1998 further prejudiced the Defendant, which had again prepared for trial, gathered its evidence, and summoned its witnesses. Preparing for these two trials was not without substantial cost to the Defendant, in both time and money. The delay, inconvenience, attorney's fees, and other expenses constitute substantial prejudice to the Defendant, particularly when considered in conjunction with the various other acts of delay and misconduct by the Plaintiff outlined below. See Ehrenhaus, 965 F.2d at 921 ("Ehrenhaus' actions prejudiced the defendants by causing delay and mounting attorney's fees.").

### B. *Interference with the Judicial Process*

Plaintiff's failure to appear for trial on January 12, 1998 resulted in a large degree of inconvenience and interference with the judicial process. The trial judge and the judge's staff had taken the essential steps to prepare for trial, including reviewing exhibit lists, witness lists, and proposed jury instructions. In anticipation of the trial going forward, the courtroom deputy had refrained from scheduling other hearings and trials that week; the Plaintiff's failure to appear for trial created a gap in a busy courtroom schedule during which other hearings could have been scheduled and conducted. If such interference with the judicial process were to go unpunished, the result would be chaos for the trial courts.

The jury clerk had arranged for a panel of prospective jurors to assemble in the courthouse at 1:00 p.m. on January 12, 1998. These prospective jurors were part of the "overflow" group that participated in jury selection before Chief United State District Judge Conway in the morning of January 12, 1998.[2] The jurors were instructed to return to the courthouse at 1:00 p.m. for jury selection in Plaintiff's case. They then sat by for almost two hours while all present waited for Plaintiff to appear and the judge conducted a hearing on Defendant's motion to dismiss and Mr. Speer's motion to withdraw as counsel for Plaintiff. Jurors perform a valuable public service, taking time out of their busy lives to act as judges of their peers. The inconvenience to those prospective jurors—waiting patiently but idly due to Plaintiff's failure to appear—cannot be

---

[2] Plaintiff argues that he should not be required to pay the costs of assembling this group of jurors because they had to come to court that day anyway to participate in jury selection before Judge Conway, who was selecting a jury for Judge Vázquez. This is not the case. In anticipation that both Judge Conway and I would be selecting juries on January 12, 1998, the jury clerk called more prospective jurors than she would have if only one jury were to be selected. Thus, the costs of assembling the jurors that were "leftover" from Judge Conway's jury selection were appropriately assessed against the Plaintiff.

4

overstated.

### C. *Plaintiff's Culpability*

Plaintiff is highly culpable in his failure to appear for trial. In a Memorandum Opinion and Order entered November 26, 1997, Plaintiff was informed that his trial was scheduled to begin on January 12, 1998.[3] *(Doc. No. 106)*. On December 17, 1997, Plaintiff again was sent proper notice that the trial would take place on January 12, 1998 at 1:00 p.m. *(Doc. No. 118)*. On both January 7 and January 9, 1998, Plaintiff's counsel, Mr. John B. Speer, informed Plaintiff that trial would begin on January 12, 1998 at 1:00 p.m. *Transcript of Proceedings, Jan. 12, 1998, at 2*. Finally, on January 7, 1998 counsel for the Defendant subpoenaed the Plaintiff to the trial. *Transcript of Proceedings held January 12, 1998 at 13*. The only witness that Plaintiff intended to present in his case-in-chief was Plaintiff himself, so he must have understood that the trial could not go forward without his presence. *Id. at 7; Plaintiff's Witness List (Doc. No. 138)*.

The history of this case makes it impossible to believe that Plaintiff's failure to appear for trial on January 12, 1998 was a simple mistake on his part. In fact, Plaintiff had declined to appear for several other important hearings in his case. For example, Plaintiff did not appear at a pretrial conference held May 22, 1997, despite the fact that he had been notified of the conference via the Initial Pretrial Report entered September 19, 1996. *See Order entered May 22, 1997 (Doc. No. 90); Initial Pretrial Report (Doc. No. 9)*. At the May 22, 1997 pretrial conference,

---

[3]The Order and Judgement of the Court of Appeals erroneously states, "At the pre-trial conference [held January 6, 1998], the district court set the case for trial on Monday, January 12, 1998." In fact, the district court set the case for trial on January 12, 1998 in a Memorandum Opinion and Order entered November 18, 1997 and then confirmed the January 12, 1998 trial setting by a Notice of Trial sent December 17, 1997. At the pre-trial conference on January 6, 1998, the district court merely reconfirmed the January 12, 1998 trial setting, notice of which had twice been given to the Plaintiff in the preceding months.

counsel for the Defendant stated that Plaintiff had failed to appear at a status conference before Magistrate Judge Deaton in April of 1997. *See Transcript of Proceedings held May 22, 1997 at 10; see also Transcript of Proceedings held January 6, 1998 at 24.* In his Memorandum Opinion and Order entered June 18, 1997, Judge Deaton confirmed that Plaintiff had not attended the status conference. *(Doc. No. 100 at 2).* In addition, Plaintiff did not come to the call of the calendar on January 6, 1998, despite the fact that his counsel, John Speer, had instructed him to be present *(Transcript of Proceedings held January 6, 1998 at 3)* and despite the fact that Plaintiff had already been in the courthouse at a hearing before Judge Deaton earlier that same day, January 6. Instead, Plaintiff left the courthouse before the time set for the calendar call, telling his counsel that he was "tired." *Id.; see also Transcript of Proceedings held January 12, 1998 at 13.*

Plaintiff may complain that he did not appear for trial because he believed the case had settled.[4] The crux of Plaintiff's argument appears to be that on either January 8 or January 12, 1998,[5] he verbally authorized his attorney, John Speer, Esq., to accept an offer of settlement made by the Defendant and therefore believed he need not come to court for trial. However, nothing in the record indicates that Plaintiff had a good faith belief that his case had actually been resolved

---

[4]See, e.g., Plaintiff's Pro Se Affidavit of Bias or Prejudice, filed June 14, 1999 (Doc. No. 187) at ¶18; Plaintiff's Brief in Support of Motion for Reconsideration, filed June 19, 1998 (Doc. No. 174) at 3; Plaintiff's Motion for Reconsideration, filed June 19, 1998 (Doc. No. 173) at 3-4; Plaintiff's Renewed Motion for Leave to Appeal In Forma Pauperis, filed March 17, 1998 (Doc. No. 156) at 2; Plaintiff's Memorandum Brief in Opposition to Defendant's Motion for an Extension of Time, filed January 30, 1998 (Doc. No. 143) at 1; Plaintiff's Opposition Papers to Defendant's Motion for an Extension of Time, filed January 30, 1998 (Doc. No. 142) at ¶5,7.

[5]Plaintiff cites two different dates in his Opposition Papers to Defendant's Motion for an Extension of Time, filed January 30, 1998 (Doc. No. 142) at ¶5,7.

by settlement before trial. Certainly, the record does indicate that the Defendant made efforts to settle with Plaintiff in the days leading up to trial. On January 9, 1998, Carman Lavendar, counsel for Defendant, hand-delivered a letter to Mr. Speer enclosing a settlement agreement and a stipulated order of dismissal. *Defendant's Response to Motion by Plaintiff Pro Se for an Order Disqualifying the Hon. James A. Parker, filed March 20, 1998 (Doc. No. 159), Exhibit C.* In her letter, Ms. Lavender stated that if neither document was fully executed and returned to her before 4:45 p.m. on January 9, 1998, she would subpoena Plaintiff to trial and request dismissal of the case under Rule 41(b). *Id.* This course of events is confirmed by Ms. Lavender's time records, which indicate that on January 8, 1998, she received a telephone call from Mr. Speer in which he informed Ms. Lavender that Plaintiff accepted the settlement offer. *Defendant's Motion for Attorney's Fees and Costs, filed January 22, 1998 (Doc. No. 139), Exhibit 1 at 20.* On January 9, 1998, Ms. Lavender then hand-delivered the settlement agreement and other papers to Mr. Speer. *Id.* Ms. Lavender's records note that by January 10, 1999, Plaintiff had not returned the signed settlement agreement to her; the other entries on that day and the next reflect trial preparation by Ms. Lavender. *Id.*

This evidence indicates that, although a verbal offer of settlement had been made, it was contingent upon Plaintiff's signing the settlement agreement. Plaintiff claims to have told Mr. Speer that he agreed to the settlement; Plaintiff does not argue, nor is there any evidence, that he ever signed the written settlement agreement by the clearly stated deadline. Therefore, there is no reasonable basis on which Plaintiff could have concluded that the case had settled. Furthermore, Defendant, Defendant's counsel, and Plaintiff's counsel all understood that the case had not

7

settled and consequently all of them appeared for trial.[6] Given this record, it is highly unlikely that Plaintiff was under a good faith belief that the case had settled and that his appearance in court on January 12, 1998 was unnecessary.

As the Tenth Circuit Court of Appeals correctly observed in its Order and Judgment entered June 4, 1999, Plaintiff's counsel, John Speer, Esq., had filed a motion to withdraw as counsel for the Plaintiff shortly before this case was dismissed. At the call of the calendar on January 6, 1998, which Plaintiff refused to attend, Mr. Speer made an oral motion requesting permission to withdraw as counsel for the Plaintiff. *Transcript of Proceedings held January 6, 1998 at 3*. The court stated that it could not rule on the motion without both Plaintiff and Mr. Speer being present and instructed Mr. Speer to tell his client to be in court on January 12, 1998 at 1:00 p.m. *Id. at 4*. The court also advised Mr. Speer that both he and his client should be ready to try the case on January 12 because there had been no ruling on the motion to withdraw. *Id.* The court commented on the record, "I am distressed, frankly, that he [Plaintiff] is not here so we can get this all resolved well in advance of jury selection." *Id. at 23*. Mr. Speer then advised the court that he had urged his client to come to the call of the calendar, to which Plaintiff simply responded, "No, I won't do that." *Id. at 24*. The next day, January 7, 1999, Mr. Speer filed a written motion to withdraw as counsel for the Plaintiff. *(Doc. No. 129)*. The two-sentence motion, which incorporates Mr. Speer's certificate of mailing to the Plaintiff, explicitly states that "This motion will be heard by Judge Parker at 1 pm Monday, January 12, 1998." *Id.* Thus, Plaintiff had sufficient advance notice that Mr. Speer's motion to withdraw had not been granted

---

[6]Plaintiff makes the unsubstantiated accusation that this was the result of a "conspiracy" between Ms. Lavender, Mr. Speer, and the court. There is no support for this false statement.

8

but would be heard on January 12, 1998 at 1:00 p.m.

On January 9, 1998, Plaintiff filed his "Opposition Papers to the Motion to Withdraw by His Attorney of Record." *(Doc. No. 130)*. In that document, Plaintiff requested that his case be removed from the trial calendar until the issue of Mr. Speer's representation was resolved. *Id. at ¶9.* Plaintiff requested that, should he be required to represent himself, his trial be rescheduled six months later, and then summarily stated "it appears to plaintiff that there certainly will be no trial in this case on Jan. 12, 1998, consequently plaintiff will not appear in court on Jan. 12th."[7] *Id. at ¶11-12.* This statement confirms the fact that Plaintiff was fully aware that this court had ordered him to appear in court on January 12, 1998, and that he willfully disregarded that order. In fact, the issues of Mr. Speer's representation of Plaintiff and whether or not the case would go to trial on January 12, 1998 were not yet resolved; the court had ordered Plaintiff to be in court so that it could decide the motion to withdraw and the motion to continue. Thus, it was in Plaintiff's best interest to appear in court and argue his position on those motions. He alone must bear the responsibility for his failure to do so.

In short, nothing in the record indicates that Plaintiff was anything but culpable in his failure to appear for the motions hearing and trial. Plaintiff Robert Dimond simply and intentionally refused to attend court on January 12, 1998, an act of bad faith by which he deliberately flouted this court's order to appear.

---

[7]Nowhere in his response to Mr. Speer's motion to withdraw does Plaintiff indicate that he believed that the case had settled and that the trial was unnecessary for that reason.

### D.     *Advance Warning*

Although Plaintiff was not explicitly warned by the court that his failure to appear for trial on January 12, 1998 would result in dismissal of his case under Rule 41(b), Robert Dimond is not an ordinary plaintiff who would require such a warning. The court did not advise Plaintiff that if he refused to come to the trial of his lawsuit and present sufficient evidence to support his claim, the Defendant he sued would win, Plaintiff would lose, and Plaintiff's lawsuit would be dismissed.[8]  This principle should have been abundantly clear, without warning, to Mr. Dimond, who had been educated in the law, who had been awarded a law degree, who had been admitted to practice law as a member of the Bar of the State of New York, who had practiced law, and who had participated in numerous lawsuits as a party litigant, usually as a suing plaintiff. This proposition also appears to be implicit in the language of Federal Rule of Civil Procedure 41. The trial court assumed—with considerable justification given Mr. Dimond's education, training, and experience—that he was familiar the Federal Rules of Civil Procedure and the consequences that ensue to litigants who fail to abide by those rules.[9]

---

[8] Frankly, the court is unaware of any trial judge in the United States of America who explicitly advises a party-plaintiff that the plaintiff must offer evidence at a trial in support of the plaintiff's claim, failing which the plaintiff's lawsuit will be dismissed. This basic proposition would seem to be evident to anyone with a modicum of legal training—whether or not the person had been formally educated in the law and had earned a law degree. It should be perfectly obvious to any person with a legal education, including an appellate or trial judge, a law clerk to an appellate or trial judge, and any other lawyer—even one who seldom visits a trial court.

[9] Plaintiff's former counsel John Speer confirmed that Plaintiff had been a lawyer in the state of New York. *Transcript of Proceedings held May 22, 1997 at 3.* See also Suffolk County Bar Ass'n v. Dimond, 30 A.D.2d 661, 292 N.Y.S.2d 138 (1968). As a former attorney, Plaintiff should be well aware that the plaintiff in a civil lawsuit carries the burden of going forward with evidence in support of his claims, and that failure to meet that burden will result in the dismissal of those claims for failure to prosecute. See FED. R. CIV. PRO. 41(b).

His formal legal education aside, Plaintiff has extensive experience in civil litigation as both a plaintiff and a defendant. The court takes judicial notice of the fact that Robert Dimond has been a party to nine lawsuits in the United States District Court for the District of New Mexico since 1988 and he was the plaintiff in all but one of those cases.[10] Furthermore, Plaintiff has been involved in a plethora of civil lawsuits in state court. Although the full extent of plaintiff's activities as a litigant is unclear, an indication of their scope can be gleaned from Plaintiff's response to Defendant's Interrogatory No. 19, attached as Exhibit A to Defendant's Response to Plaintiff's Motion in Limine, in which Plaintiff enumerated eighteen civil actions in which he has participated since 1978. *(Doc. No. 120)*. Apparently in response to Defendant's Interrogatory No. 19, Plaintiff also submitted the affidavit of Mary Frederick, a legal assistant in Portland, Oregon, which is dated January 30, 1992. In that affidavit (Exhibit B to Defendant's Response to Plaintiff's Motion in Limine), Ms. Frederick states that "Robert Dimond has filed over thirty lawsuits, administrative claims and insurance claims since 1980." *Id. at ¶7*. Judge Deaton has also noted Plaintiff's litigious history. *Memorandum Opinion and Order entered June 18, 1997 at 1. (Doc. No. 100)*.

In short, Plaintiff was trained as a lawyer and, despite the fact that he has not been authorized to practice law for a number of years, has continued to be an active participant in the arena of litigation, albeit as a party rather than as a counselor. He was fully cognizant of his responsibilities as a plaintiff and of the probable consequence of his failure to appear for trial.

---

[10] Dimond v. New Mexico Corrections Dept., Civ. No. 88-1297; Dimond v. United States, Civ. No. 93-191; Dimond v. J C Penney Co., Civ. No. 95-04; Dimond v. Innovative Services, Civ. No. 95-71; Dimond v. Maximum Security, Civ. No. 95-322; Perls v. Dimond, Civ. No. 95-584; Dimond v. Allsups Convenience Stores, Civ. No. 96-1013; Dimond v. RCI, Inc., Civ. No. 96-1412; Dimond v. J C Penney Co., Civ. No. 94-718.

### E. *Efficacy of Lesser Sanctions*

"[D]ismissal is usually appropriate 'only where a lesser sanction would not serve the interest of justice.'" Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir. 1988) (quoting Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923, 925 (11th Cir. 1986)). Thus, in cases where a plaintiff fails to appear or to obey a court order through inadvertence or simple neglect, the deterrent effect can usually be achieved through lesser sanctions. Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1465 (10th Cir. 1988).

This is not such a case. Rather, there is a clear record of delay and contumacious conduct by Plaintiff throughout the case that rises above mere negligence or inadvertence. First, Plaintiff failed to appear in court on several occasions, as explained above. Second, Plaintiff repeatedly caused delays in the case by, *inter alia*, failing to file his portion of the Pretrial Order in a timely manner, filing two different motions to vacate discovery deadlines, and failing to notify the court timely that he had filed for bankruptcy.[11] Thus, this case bears no resemblance to Meeker v. Rizley, 324 F.2d 269 (10th Cir. 1963), in which the Tenth Circuit reversed a default judgment entered against a pro se plaintiff whose only infraction was his failure to appear at a pretrial conference.

Because of Plaintiff's recurring, knowing, and blatant disregard for the orders of this court, the sanction of dismissal of Plaintiff's case was appropriate. A lesser sanction would have been neither proper nor efficacious.

---

[11] The court outlined these delays more fully on the record at the January 12, 1998 hearing.

**III.     Rule 50(a) Dismissal for Insufficiency of Evidence**

At 1:00 p.m. on January 12, 1998, the time and date scheduled for trial, the trial judge called the case for commencement of trial—beginning with the selection of a jury from among the venire that was awaiting voir dire examination. The attorney for the Plaintiff, Mr. Speer, and the two attorneys for the Defendant stated their appearances on the record. The court did not proceed with jury selection because it was apparent that would have been a wasteful, futile act under the unusual circumstances of this case: the Plaintiff's only evidence was his own testimony which he was not present to give to the jury. Had there been other evidence supporting Plaintiff's claim, the Plaintiff's attorney could have offered it for the jury's consideration after empanelment of a jury. As in any civil jury trial, upon completion of presentation of the plaintiff's evidence the trial court would then have determined whether the evidence was sufficient to support a verdict in the plaintiff's favor and, if not, would have dismissed the plaintiff's complaint under Rule 50(a). In essence, that is what occurred in this case on January 12, 1998. The Plaintiff's evidence was insufficient to support his claim because it was non-existent. The trial court could have empaneled a jury, then called upon Plaintiff's counsel to present Plaintiff's evidence, and thereafter dismissed Plaintiff's case under Rule 50(a) for lack of sufficient evidence. However, jumping through these hoops appeared to be a waste of the jurors' time, a waste of judicial resources and a needless increase in the Defendant's expenses. When Ehrenhaus is extended beyond its facts and applied to situations such as that in this case, where a trial has commenced, a defaulting plaintiff who offers no evidence is given an advantage over a plaintiff who goes to the time, effort, and expense of producing evidence in court at trial that may fall barely short of being enough to avoid a Rule 50(b) dismissal. Although the trial court did not dismiss Plaintiff's case

13

under Rule 50(a), it could have done so by imposing on the venire, the lawyers and the court staff by proceeding to select a jury and asking Plaintiff's counsel to present his evidence—which Plaintiff's counsel would not have been able to do because of Plaintiff's conduct—and then dismissing this action under both Federal Rules of Civil Procedure 41(e) and 50(a).

**IV.　Conclusion**

The court hopes this adequately explains where the facts stated on the record January 12, 1998 fit within the Ehrenhaus factors and why the Plaintiff's lawsuit was dismissed under Rule 41(e), instead of also under Rule 50(a).

_____
UNITED STATES DISTRICT JUDGE